**FILED**
**SEPTEMBER 2, 2021**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RICHARD MANSOR and TONI MANSOR, husband and wife, | ) ) ) | No. 37771-7-III |
| Respondents, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| JABCO, INC., a Washington corporation, | ) ) ) | |
| Appellants. | ) | |

PENNELL, C.J. — Jabco, Inc. appeals a summary judgment order issued in favor of

Toni and Richard Mansor, enjoining Jabco's nonresidential use of its property based on a

restrictive covenant. We affirm.

## FACTS

The parties own land in a subdivision subject to restrictive covenants. The

covenant applicable to this case states:

> This plat is approved as a residential subdivision and no tract is to have
> more than one single family residential unit. Conversion of any lot to other
> than its authorized occupancy must be in accordance with authorizations
> associated with separate application and procedure.

Clerk's Paper's (CP) at 171.

Despite the wording of the covenant, Jabco obtained a conditional use permit from Stevens County allowing it to pursue commercial use of its land. The Mansors did not contest the county's conditional use permit. Instead, they filed an action in superior court for declaratory judgment and for an injunction against Jabco's nonresidential use of the property. The Mansors claimed Jabco's nonresidential use of its property violated the property's covenant. The superior court agreed and issued a summary judgment order in the Mansors' favor. Jabco appeals.

## ANALYSIS

Jabco contends the summary judgment order should be reversed because the wording of the covenant gave Stevens County the authority to modify the restrictive covenant and authorize a nonresidential use of the property. Covenant interpretation presents a legal question governed by contract interpretation rules. *Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wn.2d 241, 249, 327 P.3d 614 (2014). Our primary objective in interpreting covenants or contracts is to discern the drafters' intent. *Id*. at 250. Intent is a factual question. But when the available evidence warrants but one conclusion, assessing intent may be determined by this court as a matter of law, de novo. *See id.*

The parties spend much of their briefing debating which entity was authorized to issue exceptions to the covenant's restrictions. According to Jabco, Stevens County held

this power. The Mansors counter that authorization can only be obtained from the property owners. The covenant itself is silent on this issue. Rather than try to fill in the gaps, we find the parties' dispute is most easily resolved by focusing on the wording of the covenant and the nature of the applicable restrictions and exceptions.

We turn first to the initial sentence of the covenant. This sentence identifies two governing restrictions. The first restriction pertains to the use of the subdivision and states that the area shall be residential. The second restriction pertains to occupancy and states no tract within the subdivision shall have more than one family unit.

The covenant's second sentence addresses exceptions to the restrictions. It states, "Conversion of any lot[1] to other than its authorized occupancy must be in accordance with authorizations associated with separate application and procedure." CP at 171. The wording of this exception is limited. The covenant recognizes the possibility of exceptions to the restrictions on "occupancy." However, there is no provision allowing exceptions to the restrictions on use.

---

[1] The second sentence uses the word "lot" instead of "tract," which is used in covenant's first sentence. This distinction is immaterial. At the time the covenant was written, the two terms were interchangeable. *See* Former RCW 58.17.020(8) (1969). (defining "lot" to "include tracts or parcels").

3

Restrictions on occupancy are different from restrictions on use. Occupancy refers to the number of people or households authorized to inhabit a piece of land. Use refers to the purpose to which the property is directed. Covenants, like the one in this case, often restrict both occupancy (single-family homes) and use (residential purposes). But not always. A covenant may restrict structures to single-family occupancy, but still allow for nonresidential land use. *See Burton v. Douglas County*, 65 Wn.2d 619, 622, 399 P.2d 68 (1965). Alternatively, a covenant might restrict land to residential use, but allow for multi-family occupancy. *See Mains Farm Homeowners Ass'n v. Worthington*, 121 Wn.2d 810, 819, 854 P.2d 1072 (1993) (discussing permissibility of roughly a dozen nuns' residential use of property given no single-family residential restriction in *Hunter Tract Improvement Co. v. Corp. of Catholic Bishop*, 98 Wash. 112, 167 P. 100 (1917)).

The covenant here restricts both occupancy and use, but the exceptions to restrictions apply only to occupancy. By its plain terms, the covenant allows a home owner to obtain authorization for a nonconforming multi-family building. However, there is no procedure for avoiding the covenant's residential use restriction.

Because the covenant does not allow for exceptions to residential use, it does not matter whether Stevens County, or some other entity, was authorized to issue exceptions

4

to the covenant's restrictions. Jabco's request for relief from the residential use restriction is simply not available under the terms of the covenant.

As an alternative argument, Jabco contends the restrictive covenant is no longer enforceable because, under RCW 58.17.170, the terms of a subdivision plat are effective for no longer than 10 years. We disagree. RCW 58.17.170(3)(b) relates to the length of a property owner's vested development rights. *See Jones v. Town of Hunts Point*, 166 Wn. App. 452, 458, 272 P.3d 853 (2011) (interpreting former RCW 58.17.170 (2010)). It does not limit the duration of private land use covenants. *See id.*

As recognized in the superior court's summary judgment ruling, enforcement of public zoning laws and private restrictive covenants are distinct processes governed by separate rules and interests. The fact that Jabco obtained approval for nonresidential use of its property through the county's zoning procedures does not mean it was entitled to disregard restrictions contemplated by private covenant. Because the covenant pertaining to Jabco's property prohibits nonresidential use without the possibility of exceptions, the superior court properly issued a summary judgment order in the Mansors' favor.

## CONCLUSION

The summary judgment order is affirmed. We deny the Mansors' request for attorney fees under RAP 18.1 and RAP 18.9 as Jabco's appeal is not wholly frivolous.

5

No. 37771-7-III
*Mansor v. Jabco, Inc.*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Staab, J.